HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TSMS GROUP INC., a Washington corporation, | Case No. 2:25-cv-01008-RAJ |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION TO DISMISS |
| v. | |
| T'ORDER INC., a Korean company; and TORDER CANADA, INC., a Canadian corporation, | |
| Defendants. | |

ORDER – 1

## I.    INTRODUCTION

THIS MATTER comes before the Court on the Motion to Dismiss filed by torder Canada, INC. ("torder Canada") (the "torder Canada Motion," Dkt. # 15) and the Motion to Dismiss Plaintiff's Tortious Interference Claim (the "t'order Korea Motion," Dkt. # 21) filed by t'order INC. ("t'order Korea," and together with torder Canada, the "Defendants").  The Court has reviewed the torder Canada Motion and the t'order Korea Motion, the submissions in support of and in opposition to each motion, and the balance of the record.  *See* Dkt. ## 15–20, 21, 24–26.

For the reasons set forth below, the Court **GRANTS** the torder Canada Motion Motion and the t'order Korea Motion.  torder Canada is **DISMISSED** from this action and Count III of the Amended Complaint against t'order Korea is **DISMISSED**.

## II.    BACKGROUND

TSMS is a corporation based in Bellevue, Washington offering "point of sale ('POS') processing services." Dkt. # 14 ¶ 9.  The company's POS services are "designed to help clients in the service industry – retail stores, restaurants, and grocery stores, among others," manage customer payments.  *Id.*  t'order Korea is a Korean corporation based in Seoul which sells tablet ordering systems "designed to take orders instantly from a restaurant customer's table to expedite the ordering process."  *Id.* ¶ 10.  t'order Korea has two subsidiaries, including torder Canada, a Canadian-incorporated entity.  *Id.* ¶ 11; Dkt. # 15 at 8.

TSMS alleges that Defendants "reached out to one of TSMS' customers, inquiring about their existing POS system," and subsequently "expressed its interest in entering the U.S. market," whereby the companies "began discussions." Dkt. # 14 ¶ 12.  On May 20, 2024, TSMS entered into an Exclusive Distributor Agreement with t'order Korea (the "Exclusive Distributor Agreement," Dkt. # 16-1), which granted TSMS the exclusive

ORDER – 2

right to sell t'order Korea's tablets in Washington during a three-month "proof of concept" period. *Id.*; Dkt. # 15 at 8; Dkt. # 16-1 at 4 (Exclusive Distributor Agreement Art. 3, § 2). If certain targets were met, TSMS's guaranteed exclusivity period would extend for two years from the installation date of TSMS' first end customer. Dkt. # 14 ¶ 14; Dkt. # 16-1 at 3–4 (Exclusive Distributor Agreement Art. 3, § 1; Art. 4, § 1).

Approximately one month after TSMS' and t'order Korea's execution of the Exclusive Distributor Agreement, on June 18, 2024, TSMS and torder Canada entered into an agreement (the "torder Canada Agreement," Dkt. 16-2). Dkt. # 14 ¶ 15; Dkt. # 15 at 8. The torder Canada Agreement is described in the opening paragraph as a "Service Agreement." Dkt. 16-2 at 2. t'order Korea is not a signatory to the torder Canada Agreement. *See id.* at 7. TSMS alleges that the execution of torder Canada Agreement was necessitated by its realization that "important material terms were missing" from the Exclusive Distributor Agreement. Dkt. # 14 ¶ 15. Accordingly, TSMS purportedly asked t'order Korea to "enter an amendment to" the Exclusive Distributor Agreement. *Id.* However, TSMS alleges, "because [torder Canada] was the entity performing" the Exclusive Distributor Agreement, torder Canada "insisted it be the entity" to execute the torder Canada Agreement. *Id.* TSMS accordingly construes the torder Canada Agreement as an amendment to the Exclusive Distributor Agreement, which purportedly "helped [torder Canada] more effectively implement the [Exclusive Distributor Agreement] with TSMS in Washington" by "integrat[ing] Verona," a point of sale ('POS') service, "with the t'order system, and [reducing] costs related to usage of a POS system." *Id.* Specifically, pursuant to the torder Canada Agreement, TSMS "agreed to migrate its TSMS t'order customers directly to [torder Canada's] dealer portal, and the [POS] dealer portal was shared between [torder Canada] and TSMS." *Id.*; Dkt. # 16-1 at 2. TSMS contends that, by signing the torder Canada Agreement, torder Canada

ORDER – 3

became a party to the Exclusive Distributor Agreement, by "specifying the terms under which [t'order Korea and torder Canada] would carry out their obligations" under that agreement. *Id.* torder Canada disputes that the torder Canada Agreement is an amendment to the Exclusive Distributor Agreement. Instead, torder Canada views the torder Canada Agreement as a standalone contract governing the online dealer portal operated by torder Canada, which is distinct from the t'order Korea tablet menu devices that were the subject of the Exclusive Distributor Agreement. Dkt. # 15 at 8-9.

TSMS alleges that Defendants failed to adequately prepare "the menus and system settings," delaying TSMS from delivering its orders "for more than two months after the start of its POC period in May of 2024." Dkt. # 14 ¶ 16. TSMS was therefore left with the "effectively impossible task of meeting its obligations to deliver (100) products to end customers in the final month of the three-month POC period." *Id.* Additionally, Plaintiff avers that Defendants "affirmatively entered into contracts with two Washington customers t'order knew TSMS was courting – Woobling Korean BBQ ('Woobling') in Bellevue and Pelicana Chicken ('Pelicana') in Seattle – before August 20, 2024, in violation of TSMS' exclusivity rights, and with significantly lower license costs for t'order system than what it agreed upon with TSMS." *Id.* ¶ 17. As to torder Canada, TSMS alleges that, on August 19, 2024, the subsidiary "entered into an agreement with Woobling, leasing the items for significantly under the agreed-upon dealer price it required SMS to charge." *Id.* ¶ 18. As to t'order Korea, TSMS alleges that the corporation entered an agreement with Pelicana and Gogiro Korean BBQ & Shabu ("Gogiro"), restuarants that Defendants knew had "expressed interest in contracting with TSMS." *Id.* ¶ 44.

On the basis of the foregoing allegations, Plaintiff brings the following causes of action against both Defendants: (1) Breach of Contract; (2) Breach of the Duty of Good

ORDER – 4

Faith and Fair Dealing; and (3) Tortious Interference With Business Expectancy. *Id.* ¶ 29–46. torder Canada filed the torder Canada Motion, seeking dismissal of all counts. Dkt. # 15. The t'order Korea Motion seeks dismissal only of Plaintiff's Tortious Interference With Business Expectancy cause of action. Dkt. # 21.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

### IV.    DISCUSSION

**A.    torder Canada Motion**

torder Canada seeks dismissal of Counts I and II of the Amended Complaint, Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing, on the basis that TSMS has not alleged any breach of the torder Canada Agreement, and torder Canada is not a party to the Exclusive Distributor Agreement. Dkt. # 15 at 11–12. TSMS responds that torder Canada became a party to the Exclusive Distributor Agreement through its execution of the torder Canada Agreement, which functions as an "amendment" to the earlier agreement with t'order Korea. Dkt. # 17 at 13–17.

ORDER – 5

The Court agrees with torder Canada. A breach of contract claim "cannot survive without a contract between the parties." *Lowden v. T-Mobile USA, Inc.*, 2009 WL 537787, at *1 (W.D. Wash. Feb. 18, 2009), *aff'd*, 378 F. App'x 693 (9th Cir. 2010). Under certain circumstances, "[i]nstruments which are part of the same transaction, relate to the same subject matter and are executed at the same time should be read and construed together as one contract, even though they do not refer to one another, or *even though they are not executed between the same parties.*" *Turner v. Wexler*, 14 Wn. App. 143, 146, 538 P.2d 877 (1975). Plaintiff relies on *Turner* to argue that the torder Canada Agreement and the Exclusive Distributor Agreement are "inextricably linked" and must therefore be read as one contract. Dkt. # 17 at 4. However, the later agreement analyzed in *Turner* related to "specific parcels of the same property" addressed in the earlier agreement. *Id.* (citing *Turner*, 14 Wn. App. at 144). Ultimately, however, this is a case-specific analysis, which turns upon the apparent intentions of the parties. *See American Pipe & Construction Co. v. Harbor Construction Co.*, 51 Wn.2d 258, 265, 317 P.2d 521 (1957) ("[t]he rule is one of *interpretation* only and we do not think that it can be extended to create a contract where none was intended.") And as a general principle, "no contractual relationship exists between two parties who independently contract with a third, even though both contracts were part of the same transaction." *Gen. Ins. Co. of Am. v. Fort Lauderdale P'ship*, 740 F. Supp. 1483, 1488 (W.D. Wash. 1990) (citing *Am. Pipe*, 51 Wn.2d at 265).

Here, the terms of the two contracts indicate that the parties viewed them as separate agreements. Even if the two agreements relate to similar or complementary products, the parties to the Exclusive Distributor Agreement contracted to limit the terms of the agreement to the "Product," the definition of which clearly relates to the tablet devices sold by t'order Korea. *See* Dkt. # 16-1 at 3 (Exclusive Distributor Agreement

ORDER – 6

Art. 2, § 2) ("the ordering and advertising platform service software utilizing mobile hardware, mobile hardware (of any make and specification), and other items, including a power bank (of any make and specification), cradle, and attached wires, IP router, battery hub charger, screen protector, and other related accessories to run the Software."). For avoidance of doubt, the Exclusive Distributor Agreement expressly excludes "disputes over the operation or goodwill of products other than the Product, *such as the POS*." *Id.* at 5 (Exclusive Distributor Agreement Art. 4, § 6) (emphasis added). The torder Canada Agreement specifically provides that it "pertains solely to the -order Dealer Portal sharing processing service." Dkt. # 16-2 at 2. TSMS does not appear to contest that this "dealer portal" issue relates to the POS. *See* Dkt. # 17 at 6 (explaining that the The torder Canada Agreement was necessary because "when the Master Agreement was planned and implemented, *Verona POS' dealer portal* was only accessible to t'order and Verona – not TSMS.") (emphasis added). Accordingly, the terms of the torder Canada Agreement make clear that it was expressly the kind of contract that TSMS and t'order Korea intended to exclude from the scope of the Exclusive Distributor Agreement.[1] TSMS does not appear to dispute that its contract-based claims against torder Canada arise under the Exclusive Distributor Agreement, and it does not bring any claims under the torder

---

[1]    Plaintiff submits that certain communications involving Christine Lee, the President of TSMS, support Plaintiff's position that torder Canada was a party to the Exclusive Distributor Agreement, and argues that those communications are subject to the incorporation by reference doctrine because the documents form "the basis of the plaintiff's claim." Dkt. # 17 at 8 n.2 (citing *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)); *see* Dkt. ## 19-1, 19-2. torder Canada challenges Plaintiff's characterization of the documents as meeting the requirements for incorporation by reference, and disputes both the relevance and authenticity of the exhibits. Dkt. # 20 at 7–9. The Court is not persuaded that the exhibits, which include unsworn declarations and a proposed draft agreement that was never executed, are "central to the plaintiff's claim" in this case or of undisputed authenticity such that they meet the standard for incorporation by reference. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Rowland v. King Cnty., 2025 WL 821862*, at *4 (W.D. Wash. Mar. 14, 2025) (declining to consider exhibits to the plaintiff's opposition that were not mentioned in plaintiff's complaint). Even if the Court were to consider the communications involving Ms. Lee as incorporated by reference into the Amended Complaint, however, those submissions would not disturb the Court's conclusion that the express terms of the applicable contracts foreclose Plaintiff's argument that torder Canada was a party to the Exclusive Distributor Agreement.

ORDER – 7

Canada Agreement. Counts I and II of the Amended Complaint as against torder Canada are therefore dismissed.

Plaintiff also brings a claim of Tortious Interference With Business Expectancy against torder Canada on the basis of its pursuit of a leasing agreement with Woobling. However, parties to an existing contractual agreement are not subject to the claim of tortious interference. *See Olson v. Scholes*, 17 Wn. App. 383, 390, 563 P.2d 1275 (1977) (tortious interference claim "does not apply to actions where the contest is between parties to an existing contract.") Plaintiff does not appear to challenge this argument in its Reply. Dkt. # 20 at 15. Accordingly, Count III of the Amended Complaint as against torder Canada is dismissed.

**B.    t'order Korea Motion**

At this stage of the litigation, t'order Korea challenges only Count III of the Amended Complaint. Dkt. # 21 at 4. The Court agrees that dismissal of this claim is appropriate for the same reasons articulated with respect to torder Canada. It is undisputed that TSMS and t'order Korea are parties to the Exclusive Distributor Agreement, and tortious interference claims exist "only against outsiders who interfere with the contractual relationships or business expectancies of others." *Olson*, 17 Wn. App. at 390. Accordingly, Count III of the Amended Complaint as against t'order Korea is dismissed.

//

//

//

ORDER – 8

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the torder Canada Motion Motion and the t'order Korea Motion.  torder Canada is **DISMISSED** from this action, and Count III of the Amended Complaint against t'order Korea is **DISMISSED**.

Dated this 26th day of March, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9